UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI

| | |
|---|---|
| DUANE RAY, ) | |
| ) | |
|    Plaintiff, ) | Civil Action No. 1:21-CV-00076 |
| vs. ) | |
| ) | Judge Douglas R. Cole |
| FIFTH THIRD BANK, ) | |
| NATIONAL ASSOCIATION ) | |
| D/B/A FIFTH THIRD BANK, ) | |
| ) | |
| and ) | |
| ) | |
| FIFTH THIRD INSURANCE AGENCY, INC. ) | |
| D/B/A FIFTH THIRD INSURANCE, ) | |
| ) | |
| and ) | |
| ) | |
| FOUNDATION RISK PARTNERS, CORP. ) | |
| D/B/A FOUNDATION RISK PARTNERS ) | |
| ) | |
|    Defendants. ) | |

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT, FRP'S
MOTION FOR PRELIMINARY INJUNCTION**

Comes Plaintiff, Duane Ray (hereinafter "Ray"), by counsel, and submits his Brief in Opposition to Foundation Risk Partners, Corp.'s (hereinafter "FRP") Motion for Temporary Restraining Order and Preliminary Injunction [DN #37] in advance of the February 11, 2022 preliminary injunction hearing. For the facts and reasons set forth below, Ray respectfully submits that FRP's Motion should be DENIED.

**I.  INTRODUCTION**

FRP seeks extraordinary relief from this Court in the form of a preliminary injunction based upon the representation to this Court that it has the authority to enforce non-solicitation covenants

against Ray pursuant to an Asset Purchase Agreement ("APA"), a full and complete copy of which has never been provided to this Court nor the undersigned.[1] It is FRP's burden to prove entitlement to injunctive relief and the fact that it has failed to produce the central document it contends gives it the right to such relief tellingly suggests that the APA gives it no such right.

FRP filed its Motion more than six (6) months after Ray initiated litigation seeking to enforce non-solicitation covenants in the 2020 Fifth Third Incentive Compensation Plan (the "2020 ICP") and/or a 2015 Employment, Non-Solicitation and Confidentiality Agreement (the "Epic Agreement") between Epic Insurance Solutions Agency, LLC (hereinafter "Epic Insurance") and Ray; neither of which FRP was a party. [DN #37, PageID #499]. FRP alleged it entered into an APA with Fifth Third Insurance Agency, Inc. (hereinafter "FTI") whereby FTI allegedly sold all or substantially all of its assets to FRP, and, "expressly assigned both the 2020 ICP Agreement and the Epic Agreement to FRP. Pursuant to an integration clause in the 2020 ICP Agreement, both agreements remain binding and in effect." [DN #37, PageID #500]. FRP's Motion should be denied at the outset for failing to put forth the APA it alleges gives it authority to enforce non-solicitation covenants.

## II. FACTUAL BACKGROUND

Ray, a commercial insurance broker, was forced to initiate this lawsuit against Fifth Third Bank, National Association d/b/a Fifth Third Bank (hereinafter "Fifth Third Bank") and FTI (collectively "Fifth Third") for failure to pay all earned wages, specifically commissions, under Fifth Third Incentive Compensation Plans ("ICPs") and failure to vest him with $15,000 of Fifth

---

[1] By citing to alleged provisions of the APA as evidence and refusing to produce a copy of this alleged evidence it begs the question whether this was done for an improper purpose or failure of Candor to this Court pursuant to FRCP Rule 11(b), so as to mislead Ray and his counsel into entering into the Agreed Temporary Restraining Order. Prior to filing the subject Motion, counsel for FRP sent a cease and desist letter to the undersigned dated August 10, 2021 alleging the 2020 ICP and Epic Agreement had been assigned to FRP. [DN #37-6]. FRP's counsel refused to produce a copy of the APA to enable counsel to evaluate the validity of FRP's assertions concerning the alleged assignment

Third stock ("Stock") which was additional agreed upon compensation. Ray's First Amended Complaint asserted claims against Fifth Third for willful violations of Kentucky's Wages and Hours Act, KRS 337.010, *et seq.* (hereinafter the "KWHA"), unjust enrichment, breach of contract, and an equitable accounting. Ray also sought declaratory relief to declare the purported restrictive covenants in ICPs unenforceable and prevent enforcement of the covenants against him. [DN #22].

Ray was formerly employed by Epic Insurance Solutions, LLC (hereinafter "Epic Insurance") from January 1, 2015 until October 31, 2017 when it was acquired by FTI effective November 1, 2017. Ray was employed by Fifth Third from November 1, 2017 through December 31, 2020 when FTI was acquired by Foundation Risk Partners, Corp. ("FRP"). [DN #22, PageID #134, 146-147, ¶¶ 15, 59, 64].

FTI formally offered Ray employment in an "Offer Letter and Retention Agreement" dated September 25, 2017, which was on Fifth Third Bank letterhead. [DN # 22-1]. The letter stated that Epic Insurance Solutions Agency LLC ("Epic Agency"), the entity formed to facilitate FTI's acquisition of Epic Insurance "will become an indirectly wholly-owned subsidiary of Fifth Third Bankcorp (collectively "Fifth Third")." *Id.* Fifth Third also agreed to vest Ray with $15,000 in Fifth Third Stock on the first business day of the quarter following the third anniversary of his employment with Fifth Third, which again, commenced November 1, 2017. This was a material promise Ray relied upon in agreeing to become employed by Fifth Third and there is dispute as to the actual vesting date. [DN #22, PageID #144, ¶ 52; DN #22-1, PageID # 167].

Ray was classified an employee of Fifth Third and in addition to a comprehensive Total Rewards benefits package and regular wages, Ray was entitled to certain commissions, referred to as "incentive compensation" in the form of "Agent Commissions", pursuant to Section II(A) of

the Incentive Compensation Plan. [DN #22, PageID #135, ¶ 17]. Ray acknowledged ICPs in 2018, 2019, and 2020. [DN #37-2; PageID #550].

Ray's commissions were set forth in weekly "Production Reports". [DN #22, PageID #136, ¶ 19]. According to the ICP, the payout calculation is generated by multiplying "the total monthly insurance revenue for eligible sales by the applicable production split and commission rate based on agreement type to determine the total monthly commissions earned." [DN #22, PageID #136, ¶ 21]. Fifth Third Bank assumed control of compensation calculation absent notice or consent by Ray in January 2019 and implemented a Compensation Guide that was contrary to the specific compensation methodology Ray agreed to as set forth in the ICP. [DN #22, PageID #136-137, ¶ 23]. Fifth Third used an inherently faulty system which enabled it to incorrectly calculate Agency Commissions without immediately triggering agents' suspicion. [DN #22, PageID #137, ¶ 25]. Commissions due to Ray were incorrectly calculated dating back to his employment with Epic Insurance. He repeatedly reported to Fifth Third that his commissions were incorrectly calculated during his time at Epic Insurance and Fifth Third and demanded the issues be rectified and that he be compensated for the commissions he was deprived. High level Fifth Third employees were aware that agents were not correctly paid all commissions and had no intent to address the issue. [DN #22, PageID #139, ¶¶ 29-30]. It is believed that unpaid commissions due to Ray are in excess of $75,000. [DN #22, PageID #140, ¶ 33].

Fifth Third refused to vest the $15,000 in stock and instead sent Ray a letter around December 2020 including a General Release of All Claims. The letter stated that if the deal between Fifth Third and FRP closed in 2020, Ray would become employed by FRP if he accepted the offer of employment, including a two-year non-compete, non-solicitation and confidentiality agreement with FRP. Additionally, if he agreed to the Fifth Third Release of all claims he would

receive $15,000, the same amount of the Stock option he was already entitled to.  [DN #22, PageID #145, ¶¶ 56-57].  Ray declined the FRP employment offer and did not sign the Fifth Third Release. [DN #22, PageID #135, ¶ 55].

*Myron Hobbs v. Fifth Third Bank, N.A.*, et al., Case No. 1:20-CV-1040

As this Court is aware, Ray is not the only victim of Fifth Third's intentional breaches. Ray's former co-worker, Myron Hobbs, also initiated litigation against the same parties to have restrictive covenants in his Epic Agreement and 2020 ICP declared unenforceable in the United States District Court for the Southern District of Ohio in the action captioned as *Myron Hobbs v. Fifth Third Bank, N.A.*, et al., Case No. 1:20-CV-1040.  *Hobbs* had more of an uphill battle as the movant seeking a preliminary injunction to prevent the enforcement of the restrictive covenants, while FRP is the moving party in this case.  After a two-day preliminary injunction hearing and comprehensive briefing, this Court ultimately denied Hobbs' motion for preliminary injunction, but determined Hobbs established a likelihood that the 2020 ICP was not properly assigned and could not be enforced by FRP. *Myron Hobbs v. Fifth Third Bank, N.A.*, et al., Case No. 1:20-CV-1040, 2021 WL 5577406 (S.D. Ohio Nov. 29, 2021). **Exhibit A**. The Court correctly observed, "the language of the 2020 IP is opaque at best on assignability, which arguably benefits Hobbs, thus raising a difficult hurdle for Defendants to clear at the outset should they choose to seek injunctive relief." *Id.* at *6-7.  This is the very same hurdle FRP must clear in this case with the very same facts and circumstances revolving around the issue of assignability at play.

During the *Hobbs* preliminary injunction hearing, FRP stated it was no longer seeking to enforce the restrictive covenant in the Epic Agreement because the viability of the non-solicitation covenant was "unclear under the law." *Id*. at *5; **Exhibit B**. pgs. 7-8.  It is presumed that FRP will take the same position in this case because the relevant facts and circumstances are the same for

Hobbs and Ray on this issue. However, in an abundance of caution the enforceability of the Epic Agreement will be addressed below.

### III. PRELIMINARY INJUNCTION STANDARD

FRP "bears the heavy burden of demonstrating [his] entitlement to injunctive relief. An injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Fort Wash. Inv. Advisors, Inc. v. Adkins.*, S.D. Ohio No. 1:19-cv-685, 2019 WL 4220902, at *4 (Sept. 5, 2019) (internal quotations omitted); *Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). FRP has failed to establish it is entitled to injunctive relief by clear and convincing evidence. *Honeywell, Inc. v. Brewer-Garrett Co.*, No, 97-3673, 1998 WL 152951, at *3 (6th Cir. Mar. 23, 1998) (citing *Garlock, Inc. v. United Seal, Inc.*, 404 F.2d 256, 257 (6th Cir. 1968)).

In the Sixth Circuit,

> [f]our factors guide the decision to grant a preliminary injunction: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent the injunction; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of an injunction."

*S. Glazer's Distribs. of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 849 (6th Cir. 2017) (quoting *Bays v. City of Fairborn*, 668 F.3d 814, 818-19 (6th Cir. 2012)). "[T]hese are factors to be balanced, not prerequisites to be met." *Id.* (citing *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007)).

Importantly, "preliminary injunctions should be granted lightly." *S. Glazer's Distribs.*, 860 F.3d at 849. It "involve[es] the exercise of a very far-reaching power, which is to be applied 'only in [the] limited circumstances' which clearly demand it." *Leary v. Daeschner*, 228 F.3d 729,739 (6th Cir. 2000). Stated simply, a preliminary injunction should "only be awarded upon a clear

showing that the [movant] is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). The U.S. Supreme Court made it clear that a "preliminary injunction will not be issued simply to prevent the possibility of some remote future injury." *Id.*

### (1) FRP is Unlikely to Succeed on the Merits

FRP must first establish that it is likely to succeed on the merits of its claims against Ray. FRP must "show more than a mere possibility of success" and instead must raise "questions going to the merits so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation." *Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 402 (6th Cir. 1997) (citations omitted). Accordingly, FRP must first establish the restrictive covenants in the Epic Agreement and 2020 ICP are valid and enforceable by FRP. Although no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal. *Donaldson v. United States*, 86 F. App'x 902, 903 (6th Cir. 2004). (quoting *Gonzales v. Nat'l Bd. of Med. Exam'rs,* 225 F.3d 620, 625 (6th Cir. 2000).

FRP cannot demonstrate a likelihood of success on the merits because: (a) Fifth Third could not enforce the ICP restrictive covenants; (b) the Epic Agreement expired fourteen (14) months prior to FRP's acquisition of FTI; (c) the 2020 ICP were not properly assigned to FRP; and (d) the Epic Agreement and 2020 ICP were materially breached by Fifth Third prior to FRP's acquisition.

### (a) Fifth Third Could Not Enforce the ICP Restrictive Covenants

FRP cannot enforce the non-solicitation covenants in the 2020 ICP because the covenants were not even enforceable by Fifth Third. Nowhere in the September 25, 2017 Fifth Third offer letter [DN 22-1] does state that Ray's employment is contingent on his agreement to be subject to non-solicitation or non-competition covenants. The letter specifically states that "[t]his offer may

only be modified in a document executed by you and an authorized signatory on behalf of Fifth Third." [DN 22-1, PageID# 170].

> This letter contains the entire understanding between you and Fifth Third regarding the terms and conditions of your offer of employment, including all applicable compensation terms, and supersedes any prior verbal or written communication. Please review the information above to ensure that this offer reflects our previous
>
> ${If.App.WXP}Classification: Internal Use${If.End}
>
>
> discussions. **This offer may only be modified in a document executed by you and an authorized signatory on behalf of Fifth Third.**

[DN #22-1, PageID #169-170].

Considering there was no mention of restrictive covenants being a condition of employment, a restrictive covenant could only be enforceable if it was set forth in a document executed by both Ray and an authorized signatory on behalf of Fifth Third. There is no evidence in the record of that ever occurring. It is undisputed that neither Ray nor anyone on behalf of Fifth Third *signed* the 2020 ICP (or any of the previous ICPs) which included the non-solicitation covenant. Accordingly, Fifth Third could not enforce any restrictive covenants against Ray. FRP cannot enforce a restrictive covenant that Fifth Third could not enforce. Any ambiguity as to this issue should be construed against Fifth Third as the drafting party. *See Spangler v. Spangler*, 451 F. Supp. 3d 813, 828 (N.D. Ohio 2020).

        (b)      <u>The Epic Agreement Expired fourteen (14) months prior to FRP's acquisition of FTI</u>

FRP alleges it is entitled to enforce restrictive covenants set forth in the Epic Agreement Ray entered into January 1, 2015 as a result of FTI's acquisition of Epic November 1, 2017. Fatal to FRP's argument is that the plain language of the Epic Agreement's non-solicitation covenant stated it was only enforceable "during the time [Ray was] employed with the Company and for twenty-four (24) months following the termination of such employment, regardless of the reason for such termination." [DN #37-1, PageID #512].

> 2. **RESTRICTIVE COVENANTS.**
>
>     *2.1*   *Non-solicitation*. Except for the performance of Employee's duties for the Company, during the time Employee is employed with the Company and for twenty-four (24) months following the termination of such employment, regardless of the reason for such termination, Employee shall not, directly or indirectly, do any of the following:

[DN #37-1, PageID #523].

It is undisputed that Ray's termination of employment with Epic was October 31, 2017. [DN #31, PageID #361, ¶ 5]. As discussed above, Fifth Third offered Ray employment on September 25, 2017. Accordingly, the Epic Agreement non-solicitation covenant expired twenty-four (24) months later on October 31, 2019. This is fourteen (14) months before FRP's acquisition of FTI that allegedly gave it the right to enforce the restrictive covenant in the Epic Agreement.

Even if the Epic Agreement was properly assigned to FRP (which it was not), FRP would have no greater rights by the assignment than those held by FTI. See *Citizens Fed. Bank, F.S.B. v. Brickler*, 683 N.E.2d 358, 364 (Ohio App. 1996). FTI did not have the right to enforce an expired restrictive covenant. *Doran v. Heartland Bank*, 112 N.E.3d 355, 360 (Ohio App. 2018) ("a contract cannot not be breached . . . after it expires"). Because the Epic Agreement expired before FRP alleges Ray committed any breach, FRP cannot succeed on a claim for breach of the Epic

Agreement. *See Pestel Milk Co. v. Model Dairy Prod. Co.*, 52 N.E.2d 651 (1943); *Artromick Int'l, Inc. v. Koch*, 143 Ohio App. 3d 805, 809, 759 N.E.2d 385, 388 (2001).

(c) The 2020 ICP WAS NOT Assigned to FRP

FRP's preliminary injunction motion hinges on whether the 2020 ICP was properly assigned to FRP. Once again, as this Court previously observed in the *Hobbs* case, "the language of the 2020 IP is opaque at best on assignability, which arguably benefits Hobbs, thus raising a difficult hurdle for Defendants to clear at the outset should they choose to seek injunctive relief." *Hobbs*, 2021 WL 5577406, at *6-7 (emphasis in the original). Courts must strictly construe assignments of restrictive covenants. *Managed Health Care Assoc. v. Kethan*, 209 F.3d 923, 926 (6th Cir. 2000); (holding that the assignability of a contract is a question of law to be resolved by the Court). Any ambiguity in an agreement must be construed against the drafter and its putative assignee, as well as under the rules of construction applicable to restrictive covenants. *Spangler v. Spangler*, 451 F. Supp. 3d 813, 828 (N.D. Ohio 2020); *See* also *Chicago Title Insurance Company v. Regal*, No. 1:09 CV 01063, 2009 WL 10688286, 7 (N.D. Ohio May 26, 2009). The relevant facts for FRP have not become any rosier in the months following the assessment of this issue in the *Hobbs* case.

Setting aside the fact that FRP has failed to even produce a true and complete copy of the APA, the plain language of the 2020 ICP prohibited assignment to FRP. The 2020 ICP was between Ray and "Fifth Third", which is defined in Section I of the 2020 ICP as "Fifth Third Bank, National Association (including its parent companies, subsidiaries, and affiliates, collectively 'Fifth Third, the 'Bank,' or Employer')." [DN #37-2, PageID #535].



[DN #37-2, PageID #535].

According to Section IX of the 2020 ICP, Fifth Third's rights and obligations were only assignable to Fifth Third's "successors in interest" or purchasers of "all or substantially all of" Fifth Third's assets. [DN #37-2, PageID #549].

[DN #37-2, PageID #549].

FRP has not and cannot establish that it is a "successor in interest" to Fifth Third Bank nor that FRP purchased "all or substantially all of" Fifth Third Bank's assets. This is FRP's burden to prove, not Ray's burden to disprove. Fifth Third Bank was not even a party to the APA. FRP admitted it entered into the APA "to acquire FTI's insurance business", not all or substantially all of Fifth Third's assets. [DN #37; PageID #506]. While FRP may argue that because the 2020 ICP defines Fifth Third Bank, National Association to "includ[e] its parent companies, subsidiaries, and affiliates," that FTI was a party to the 2020 ICP and could assign it to its successor, FRP, the

argument flies in the face of both law and logic. This Court has already rejected such an argument by FRP in the *Hobbs* case. *Hobbs*, 2021 WL 5577406, at *6-7 (emphasis in the original).

"[P]arent and subsidiary corporations are separate and distinct legal entities, 'even if the parent owns all the outstanding shares of the subsidiary.'" *Glidden Co. v. Lumbermens Mut. Cas. Co.*, 861 N.E.2d 109, 117 (Ohio 2006) (quoting *Mut. Holding Co. v. Limbach*, 641 N.E.2d 1080, 1081 (Ohio 1994)). Fifth Third Bank and FTI are likewise separate and distinct legal entities. "[A]bsent specific authorization, a parent corporation may not bind a subsidiary." *Id.* (citing *Linko v. Indemn. Ins. Co. of N. Am.*, 739 N.E.2d 338 (Ohio 2000)). Moreover, "[a]n assignment is a transfer to another of all or part of one's property in exchange for valuable consideration." *W. Broad Chiropractic v. Am. Family Ins.*, 122 Ohio St.3d 497, 2009-Ohio-3506, 912 N.E.2d 1093, 1095 (2009). FRP has not established that it provided any consideration to Fifth Third for an alleged assignment of the 2020 ICP.

It would appear that FRP and Fifth Third discovered that non-solicitation covenants would not be enforceable against Ray and other agents around December 2020, which is why Fifth Third asked Ray to accept the offer of employment with FRP agreeing to a two-year non-compete, non-solicitation, and confidentiality agreement and execute General Release of All Claims against Fifth Third in exchange for $15,000.

       (d)  <u>Fifth Third Committed the First Material Breach of the Epic Agreement and ICPs</u>

"It is a well-established that as a general rule, restrictive covenants not to compete are disfavored by the law" because "they are a restraint against trade and therefore against public policy." *Willis Refrigeration, Air Conditioning & Heating v. Maynard*, 12th. Dist. Clermont No. CA99-05-047, 2000 Ohio App. LEXIS 102 at *19 (Jan. 18, 2000). Ohio courts have consistently held that employers who materially breach employment agreements cannot thereafter enforce

restrictive covenants contained therein against employees. *See Brakefire, Inc. v. Overbeck,* 144 Ohio Misc.2d 35, 58 878 N.E.2d 84, 101 (2007); *Midwest Payment Systems, Inc. v. Citibank Federal Savings Bank,* 801 F.Supp. 9, 13 (S.D.Ohio 1992). A material breach of contract is "a failure to do something that is so fundamental to a contract that the failure to perform defeats the essential purpose of the contract or makes it impossible for the other party to perform." *Marion Family YMCA v. Hensel,* 178 Ohio App.3d 140, 2008-Ohio-4413, 897 N.E.2d 184.

FRP cannot not enforce the non-solicitation covenants against Ray because the first intentional and material breaches of the Epic Agreement and ICPs were by Fifth Third and FTI. See *Economou v. Physician Weight Loss Centers of America*, 756 F. Supp. 1024, 1034 (N.D. Ohio 1991) (holding that an employer who first materially breaches an agreement cannot thereafter enforce restrictive covenants). Fifth Third and FTI failed to pay Ray agreed upon agency commissions and failed to vest him with $15,000 in stock. Ray did not receive all commissions he was entitled to dating back to his employment with Epic. Fifth Third management knew Ray and other agents were not being paid all agreed upon commissions but refused to take remedial action. In an industry and profession in which an employee relies on commissions for compensation, a deprivation of commissions is clearly material. *South Texas and Lone Star Drywall Inc. v. Young,* 10th Dist. Franklin No. 77AP-140, 1977 WL 200617.

With respect to the Stock, Fifth Third attempted to deceive Ray by recycling the $15,000 Fifth Third refused to vest and using $15,000 as a consideration carrot to enter into a General Release of All Claims against Fifth Third, including any claims for unpaid commissions which Fifth Third was aware Ray may seek to collect. FRP cannot enforce the non-solicitation covenant against Ray because Fifth Third could not enforce it as it intentionally failed to correctly calculate

and pay Ray's commissions under the Epic Agreement and ICPs and failed to vest his agreed upon $15,000 stock.

### (2) FRP Cannot Demonstrate Any Irreparable Injury

While a court balances the preliminary injunction factors, the plaintiff must always demonstrate some irreparable harm before the injunction will issue. *Friendship Materials, Inc. v. Michigan Brick, Inc.*, 679 F.2d 100, 104 (6th Cir. 1982). "[E]ven the strongest showing on the other three factors cannot 'eliminate the irreparable harm requirement.'" *D.T. v. Sumner Cnty. Schs.*, 942 F.3d 324, 326-27 (6th Cir. 2019). "The moving party must demonstrate irreparable harm that is 'both certain and immediate, rather than speculative or theoretical' to satisfy its burden". *NACCO Materials Handling Grp, Inc. v. Toyota Materials Handling USA, Inc.*, 246 F. App'x 929, 943 (6th Cir. 2007). FRP has failed to articulate any certain or immediate harm it may suffer more than one (1) year after its acquisition.

"[Where the movant] does not succeed on the merits ... irreparable harm does not necessarily follow". *Ignition Athletic Performance Group, LLC v. Hantz Soccer U.S.A., LLC*, 245 Fed. Appx. 456, 460 (6th Cir. 2007). FRP has not and cannot demonstrate a likelihood of success on the merits in light of the multiple compelling arguments that tend to establish FRP has no right to enforce the non-solicitation covenant. FRP does not have an exclusive right to service certain clients. The acquisition only put it in a position to provide products and services to FTI clients and those clients have a say in the matter as well. FRP has had more than a year to develop relationships with FTI's clients and earn their continued business. If FRP has not done that and a client wants to move their business to Ray, it could only point the finger at itself for not earning the privilege of a client's continued business.

"A [movant's] harm from the denial of a preliminary injunction is irreparable if it is not fully compensable by monetary damages." *Overstreet v. Lexington-Fayette Urban County Gov't*, 305 F.3d 566, 578 (6th Cir. 2002). Despite FRP's arguments to the contrary, alleged damages would be easily calculated as FRP demonstrated in the exhibits to its Motion. Not only would FRP know that a particular client moved their business to Ray, it would also know the specific revenue by policy. [DN 37-3, PageID #560-561, 569]

For the foregoing reasons, FRP has not proven by clear and convincing evidence that it will suffer irreparable injury in the absence of a preliminary injunction.

### (3) A Preliminary Injunction Will Harm Others

The third factor to be considered is whether the preliminary injunction would cause substantial harm to third parties. *McGirr v. Rehme*, 891 F.3d 603, 610 (6th Cir. 2018). A preliminary injunction would harm third parties, specifically individuals and business that have followed Ray and been a client prior to his time at Fifth Third and Epic. There is a level of trust with a specific agent that transcends the trust of the company where the agent is employed. Ray has developed trust and strong relationships with his clients over the years. If a preliminary injunction is entered against Ray, his long-time clients, if not pleased with the products or services offered by FRP, will not be able to move their business to Ray. This prevents parties not before this court from having the ability to contract with the agent of their choice.

Ray's clients are not simply chattel that can be conveyed like a piece of property. An agent has to earn a client's business and take care of the client to keep the client. FRP would not be harmed in the absence of a preliminary injunction because it has the ability to take care of Ray's long-term clients and earn their continued business. If a client leaves FRP, that is on FRP, not Ray. Ray, on the other hand, would be harmed by the entry of a preliminary injunction because

he would not be able to service his long-term clients and have the revenue from their business. Additionally, upon information and belief, some of Ray's clients have been advised that they may be subject to legal action if they move their business to Ray. The harm flowing from those communications has been done before this Court has even ruled on the enforceability of the non-solicitation covenant. The harm to Ray by entry of a preliminary injunction is outweighed by any alleged harm to FRP by the denial of a preliminary injunction.

### (4) Entry Of A Preliminary Injunction Is Against The Public's Interest

The fourth factor to be considered is whether the preliminary injunction would serve the public interest. *McGirr v. Rehme*, 891 F.3d 603, 610 (6th Cir. 2018). A preliminary injunction would not serve the public interest because the public has an interest in an open insurance marketplace where products and services can be obtained from an agent of their choice. Restrictive covenants are disfavored and generally considered as restraints of trade under Ohio law. *Century Bus. Servs., Inc. v. Urb.*, 179 Ohio App. 3d 111, 2008- Ohio 5744, 900 N.E.2d 1048, 1054 (Ohio Ct. App. 2008). Restrictive covenants are "scrutinized carefully to ensure their intended effect is not to prevent competition, but to protect a legitimate business interest." *Invacare Corp.*, 2018 U.S. Dist. LEXIS 92187, 2018 WL 2454523, at *4 (citing *MP TotalCare Servs., Inc. v. Mattimoe*, 648 F. Supp. 2d 956, 962 (N.D. Ohio 2009)). FRP has no legitimate business interest to protect because it had no relationship with Ray's clients to begin with. The public interest would not be served by entry of a preliminary injunction.

### CONCLUSION

For the foregoing reasons, Plaintiff Duane Ray respectfully submits that FRP's Motion for Preliminary Injunction should be DENIED.

Respectfully submitted,

THOMAS LAW OFFICES

*/s/ Louis C. Schneider*
Louis C. Schneider, Esq.
250 East Fifth St, Suite 440
Cincinnati, OH 45202
Telephone: (877) 955-7001
lou.schneider@thomaslawoffices.com
*Attorney for Plaintiff*


Randall S. Strause, Esq.
STRAUSE LAW GROUP, PLLC
804 Stone Creek Pkwy, Ste. 1
Louisville, KY 40223
Telephone: (502) 426-1661
rstrause@strauselawgroup.com
*Granted admission pro hac*
*Attorney for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 4th, 2022, I filed the foregoing by the Court's ECF system, which distributes a copy of the filing to all counsel of record.

*/s/ Louis C. Schneider*
Louis C. Schneider, Esq.